# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROLANDO PADRON, et al.,

     Plaintiffs,

          v.

WAL-MART STORES, INC., d/b/a
WALMART,

     Defendant.

No. 10 C 6656
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs are people of Cuban origin who worked in Defendant Walmart's warehouse. Plaintiffs claim Defendant made adverse employment decisions against them and a class of similarly situated Cuban workers based on national origin, race and ethnicity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*, and the Civil Rights Act of 1866 ("§ 1981"), as amended, 42 U.S.C. §§ 1981 and 1981(A). Plaintiffs bring nine counts against Defendant. Counts I through III claim discrimination against a class of Cuban warehouse workers employed by Defendant, as well as against Plaintiffs individually. Counts I and II allege discrimination based on race, national origin and ethnicity in violation of Title VII under disparate impact and disparate treatment theories, respectively. Count III alleges disparate treatment based on race in violation of § 1981. Counts IV through IX claim disparate treatment based on national origin and retaliation against Plaintiffs Bobirt Miranda ("Miranda"), Eusebio Calzada ("Calzada") and Rolando Padron ("Padron") as individuals in violation of Title VII. Defendant moves to dismiss Plaintiffs' class action claims in their entirety and Plaintiffs'

individual claims to the extent they are time barred. For the following reasons, Defendant's motion is granted in part.

**I. Background**

Plaintiffs Miranda and Calzada worked in Defendant's warehouse from July 2000 to November 2006, and Plaintiff Padron worked in Defendant's warehouse from August 2001 to November 2006. On November 30, 2006, Plaintiffs filed *pro se* charges against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Each Plaintiff's nearly identical charges alleged national origin discrimination and retaliation in violation of Title VII. Plaintiffs charged that from about January 1, 2006, until their discharge in November 2006, Defendant subjected Plaintiffs, who are Cuban, to different terms and conditions of employment than similarly situated employees who were not Cuban. According to the charges, Defendant allegedly gave Plaintiffs a variable schedule, denied Plaintiffs "make-up days" and paid Plaintiffs lower wages because of their national origin. Plaintiffs charged that they complained about national origin discrimination multiple times, in retaliation for which Defendant discharged Plaintiffs. On April 12, 2010, the EEOC found reasonable cause to believe that Defendant violated Title VII by discriminating against Plaintiffs and a class of employees because of their national origin. The EEOC issued a Notice of Right to Sue on July 20, 2010.

Plaintiffs filed their complaint on October 16, 2010. Plaintiffs allege that they are Cuban and have dark-colored hair, eyes and skin and are members of a racial minority. Plaintiffs claim that Defendant intentionally paid them and a class of Cuban warehouse employees lower wages than similarly situated warehouse employees who are not Cuban because of Plaintiffs' national origin, race and ethnicity. According to Plaintiffs, Defendant's conduct caused Plaintiffs and

putative class members injuries, including lost wages, lost benefits, and physical and emotional harm.  Plaintiffs alternatively claim that Defendant's facially neutral compensation policy had a disparate impact on Cuban warehouse employees, including Plaintiffs, which deprived them of equal employment and otherwise adversely affected them.  Additionally, Plaintiffs contend that Defendant imposed upon them variable schedules, denied them make-up days, and generally treated them worse than employees who are not Cuban.

Plaintiffs claim that they first reported Defendant's discriminatory practices to Store Manager Brad Wilson ("Wilson") in 2005.  Over the following year, Plaintiffs contend that they complained of discrimination at least five more times to Wilson, District Manager "Skip" Turner, and human resources department employee Angel Gomez.  Plaintiffs allege that Defendant nevertheless continued to discriminate against them.

Finally, Plaintiffs claim that they were qualified employees who performed their responsibilities competently.  Yet, Plaintiffs allege that Defendant retaliated against them after they reported Defendant's discriminatory practices.  According to Plaintiffs, Defendant escalated its discriminatory treatment of Plaintiffs and ultimately terminated their employment.

## II. Standard of Review

Motions to dismiss challenge the sufficiency of a complaint, not its merits.  *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).  For the purpose of ruling on a motion to dismiss, a court must treat all of the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir. 1992).  To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is facially plausible.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A claim for relief is plausible if the well-pleaded facts allow a court to "infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, - - - U.S. - - - -, - - -, 129 S. Ct. 1937, 1950, 173 L. Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Id.* at 1949. Rather, legal conclusions "must be supported by factual allegations" that "plausibly give rise to an entitlement to relief." *Id.* at 1950.

**III. Discussion**

A. Counts I-III Do Not Meet Pleading Standards.

Counts I through III consist of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" of the kind held insufficient in *Iqbal*. *Iqbal*, 129 S. Ct. at 1949. Plaintiffs do not dispute that their allegations have scant factual foundation. Instead, they question the weight of *Twombly's* authority and make public policy arguments in favor of allowing discovery on Counts I through III. For the following reasons, I reject those arguments.

Plaintiffs rely on *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010), to argue that federal pleading standards are uncertain in the wake of *Twombly* and *Iqbal*. Dicta in *In re Text Messaging* does characterize *Twombly's* "scope" as "unsettled" and federal pleading standards as "in ferment." 630 F.3d at 626-27. However, the court made those statements in the context of explaining why clarifying the application of *Twombly's* pleading standard was a controlling question of law that justified granting an interlocutory appeal. *See*, *id.* Far from questioning *Twombly's* validity, however, the court recognized *Twombly's* effect by explaining the purpose of the new pleading standard, *id.* at 625-26, and attempting to sharpen the distinction *Twombly* drew between the "probability" and "plausibility" of a claim, *id.* at 629.

Plaintiffs also contend that *In re Text Messaging* supports denying dismissal of their class action claims because it recognizes that circumstantial evidence can be sufficient to state a claim under the *Twombly* standard. *See, id.* at 629. There, the plaintiff made factual allegations that could support an inference of price fixing by the defendants, such as that the defendants belonged to a common trade association, were members of a "leadership council" formed to encourage cooperation, and increased their prices when costs fell instead of cutting prices. *Id.* at 628. The court found that those allegations were circumstantial evidence of price fixing, which was sufficient to support a claim notwithstanding the absence of direct, "smoking gun" evidence. *Id.* at 628-29.

Here, however, Plaintiffs allege few facts that similarly could be circumstantial evidence that Defendant discriminated against them. For instance, Plaintiffs do not allege their rate of pay or that of similarly situated employees who are not Cuban. Further, Plaintiffs do not allege any specific instances of adverse actions that Defendant took against Plaintiffs. For example, Plaintiffs claim that Defendant subjected them to irregular scheduling and denied them make-up days, but Plaintiffs do not allege who took such actions on Defendant's behalf, when, how or under what circumstances. Additionally, Plaintiffs do not describe in their complaint a specific, facially-neutral policy that has a disparate impact on people of Cuban origin who work for Defendant. Although Plaintiffs refer to a "compensation policy" and in their response allege that this policy gives local supervisors discretion over decisions affecting employees, Plaintiffs do not allege facts showing a disparate impact on a class of workers of Cuban origin. Instead, Plaintiffs make conclusory allegations that Defendant took adverse actions and implemented policies that had a disparate impact against them and other workers of Cuban origin. In contrast to *In re Text*

*Messaging*, Plaintiffs allege almost no facts that circumstantially support their assertions under a disparate treatment or impact theory.

Plaintiffs contend that the EEOC's finding of cause to believe that Defendant violated Title VII is sufficient circumstantial evidence to support their claims. Plaintiffs cite no authority for this proposition, and I have not found any cases that directly address it. However, "judicial proceedings under Title VII do not 'review' the determinations of the EEOC but are *de novo* proceedings." *Flowers v. Local No. 6, Laborers Intern. Union of N. Am. (AFL-CIO)*, 431 F.2d 205, 208 (7th Cir. 1970). The "ultimate decision whether the claim is real or fanciful must be for the courts." *Id.* Therefore, the EEOC's finding of cause receives no deference. Significantly, I note that EEOC findings of cause are not findings of fact but the EEOC's opinion as to what the evidence showed. I also note that the EEOC chose not to bring charges against Defendant. I find that in this case the EEOC's finding of cause, without more, is not sufficient to state a plausible claim under *Twombly* and *Iqbal*.

Notwithstanding the facial inadequacy of Counts I through III, Plaintiffs argue that those counts should not be dismissed because of "informational asymmetry" favoring Defendant. Plaintiffs claim that Defendant possesses the facts that Plaintiffs need to plead their case and that Plaintiffs are powerless to obtain information without access to the discovery process. Plaintiffs contend that as *pro se* complainants who do not speak English and who are unfamiliar with the legal process, they have little choice but to rely on the EEOC's investigation and findings, much of which is redacted. According to Plaintiffs, if Defendant's motion to dismiss is granted, "informational asymmetry" unfairly would protect the Defendant from liability.

Plaintiffs also rely on *In re Text Messaging* to support their informational asymmetry argument. There, the court recognized that discovery could reveal "the smoking gun or bring to light additional circumstantial evidence that *further* tilts the balance in favor of liability." *In re Text Messaging*, 630 F.3d at 629 (emphasis added). However, the court made that statement after determining that the plaintiffs already had alleged sufficient circumstantial evidence to infer plausibly that the defendants engaged in price fixing. *See*, *id.* at 627-29. The court found that circumstantial evidence was sufficient at the pleading stage and noted that direct evidence could emerge during discovery. *See*, *id.* 628-29. As discussed above, Plaintiffs have not already alleged circumstantial evidence that plausibly gives rise to an inference of discriminatory practices by Defendant. Therefore, *In re Text Messaging* is distinguished and does not support Plaintiffs' argument that discovery should be permitted.

I also note that Plaintiffs have not established the existence or extent of any purported "informational asymmetry." Plaintiffs worked for Defendant for between five and six years. They had opportunity to observe Defendant's practices and discuss with other co-workers the terms and conditions of their employment. Presumably, such experiences prompted Plaintiffs to file EEOC charges in the first place. Yet, Plaintiffs allege few facts based on their tenure working for Defendant. Moreover, Plaintiffs could have performed an investigation to obtain additional information about Defendant's practices. Although Defendant may have exclusive access to certain types of evidence, Plaintiffs had their own ways of collecting information that could make their claims plausible. Yet, such facts are not pleaded in their complaint.

Defendant argues that Plaintiffs' complaint is precisely what *Twombly* sought to guard against: conclusory allegations made in the hope of obtaining discovery that potentially could

support Plaintiffs' claim.  Defendant is correct that preventing meritless lawsuits and needless, costly discovery was an important concern in *Twombly*.  *See*, *Twombly*, 550 U.S. at 557-59.  The Court stated that "it is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process."  *Id.* at 559.  If courts granted discovery in those circumstances, risk-averse defendants would settle even weak claims before subsequent proceedings could dispose of them.  *Id.*.  *Twombly* discourages correcting perceived informational asymmetry through discovery, which is the approach advocated by Plaintiffs.  Accordingly, Counts I through III are dismissed.

B.  Race Discrimination Claims in Counts I and II Are Outside the Scope of the EEOC Charges.

Although I already have dismissed Counts I and II because they do not meet pleading standards, for the reasons that follow I also hold that those counts are outside the scope of Plaintiffs' EEOC charges.  Title VII plaintiffs may only sue on claims that were included in their EEOC charges unless their claims are reasonably related to the EEOC charges.  *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  Defendant contends that Plaintiffs may not allege race discrimination in violation of Title VII in Counts I and II because Plaintiffs only checked the box for national origin discrimination and retaliation in their EEOC charges.  Plaintiffs respond that their EEOC charges and the EEOC's determinations state that Plaintiffs were discriminated against because they are "Cuban," and "Cuban" refers to national origin and race.  Accordingly, Plaintiffs claim that their race discrimination claims in Counts I and II are within the scope of their EEOC charges.

Plaintiffs rely on *Torres v. City of Chicago*, No. 99 C 6622, 2000 WL 549588 (N.D. Ill. May 1, 2000), to support the proposition that "Cuban" refers to national origin and race for the purposes of Title VII claims.  In *Torres*, the plaintiffs filed EEOC charges alleging national origin discrimination in violation of Title VII and listed their nationality as "Hispanic."  *Id.* at *1. The plaintiffs' complaint alleged race and national origin discrimination.  *Id.*  The court found that although "Hispanic" technically referred to ethnicity, the term also was used in practice to describe race.  *Id.* at *2.  Accordingly, because the race discrimination claim "implicate[d] the same conduct and individuals as that asserted in [the] EEOC charge," the court held that the plaintiffs' race discrimination claim was reasonably related to their national origin discrimination EEOC charge.  *Id.*  The plaintiffs' use of the term "Hispanic" would "reasonably cause the EEOC to investigate discrimination based on both national origin and race."  *Id.* (quoting *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998)).

Here, Plaintiffs described their national origin on the EEOC charging form as "Cuban," not "Hispanic."  The EEOC also used the term "Cuban" to refer to Plaintiffs' national origin in its determination that Defendant discriminated against Plaintiffs based on their national origin. Unlike the term "Hispanic," "Cuban" refers to a specific country of origin, not an ethnicity. Moreover, it is not clear that "Cuban" is used in practice to refer to a racial category, similar to use of the term "Hispanic."  For these reasons, the rationale in *Torres* seems inapplicable here.

The court in *Torres* also found that Hispanics historically have been "victims of group discrimination," an experience Hispanics share with racial groups.  *Id.* at *2.  Plaintiffs argue here that Cubans, too, historically have been discriminated against.  Therefore, Plaintiffs contend, the term "Cuban" refers to race and national origin.  Plaintiffs describe historical events such as

the Cuban Missile Crisis, the Bay of Pigs Invasion, the influx of Cuban refugees into the United States, and travel restrictions between the United States and Cuba as evidence of political tension that "led to a plurality in the meaning of 'Cuban.'" However, Plaintiffs do not explain how the diplomatic relationship between two nations – the United States and Cuba – has imbued the term "Cuban" with racial meaning. If anything, Plaintiffs' summary of diplomatic relations between the United States and Cuba emphasizes that "Cuban" refers to a nationality.

Plaintiffs also argue, in their response to Defendant's motion to dismiss, that their racial discrimination claims in Counts I and II are reasonably related to their EEOC charges because the EEOC requested information from Defendant related to the national origin and race of Defendant's employees. Plaintiffs imply that the EEOC's request for information about the racial characteristics of Defendant's employees shows that Plaintiffs' charge reasonably caused the EEOC to investigate racial discrimination. Defendant objects that Plaintiffs may not amend their complaint through their response. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). However, Plaintiffs may introduce a new fact in their response that is consistent with their complaint. *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). Nevertheless, the EEOC's subpoena request is not highly probative of the scope of the EEOC's investigation. More importantly, the EEOC's determination of cause to believe that Defendant discriminated against Plaintiffs was limited to Plaintiffs' national origin, which the EEOC described as "Cuban."

Plaintiffs' race discrimination claims under Title VII in Counts I and II are not reasonably related to their national origin discrimination charges filed with the EEOC. Therefore, although I already have dismissed Counts I and II for failure to meet pleading standards, to the extent that

those counts allege race discrimination I also hold that they are outside the scope of Plaintiffs'

EEOC charges.

C. Disparate Impact Claim in Count I Is Outside the Scope of the EEOC Charges.

Similarly, although I already have dismissed Count I because it fails to meet pleading

standards, for the following reasons I also hold that Count I is outside the scope of Plaintiffs'

EEOC charges. Defendant argues that Count I, which alleges disparate impact, should be

dismissed because Plaintiffs alleged only disparate treatment in their EEOC charges. Title VII

plaintiffs may only sue on claims that were included in their EEOC charges unless their claims

are reasonably related to the EEOC charges. *Cheek,* 31 F.3d at 500. Plaintiffs cannot bring

claims not included in the EEOC charge unless the claim "reasonably could be expected to grow

out of an EEOC investigation of the charge." *Peters v. Renaissance Hotel Operating Co.*, 307

F.3d 535 (7th Cir. 2002). An essential element of a disparate impact claim is the presence of a

"facially-neutral employment practice" that as implemented treats protected groups of people

worse than others. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 157 L. Ed.2d.

357 (2003). To bring a disparate impact claim, a plaintiff must have made an EEOC charge that

alleges a facially-neutral policy. *Remien v. EMC Corp.*, No. 04 C 3727, 2008 WL 821887, at *5

(N.D. Ill. Mar. 26, 2008). By contrast, a disparate treatment claim requires a showing that a

defendant intended to treat a group of people worse than others because those people are

members of a protected class. *See*, *Ratheon*, 540 U.S. at 52.

Here, Plaintiffs' EEOC charges failed to identify a facially-neutral policy or practice that

disproportionally impacted a class of Cuban warehouse employees. The charges allege that

Plaintiffs were subjected to different terms and conditions than employees who were not Cuban,

including a variable schedule, denial of make-up days, and lower wages. The charges also state

that Plaintiffs complained about Defendant's treatment of them, after which Plaintiffs were terminated.  Finally, the charges express Plaintiffs' belief that Defendant discriminated against them because they are Cuban.  Therefore, the Plaintiffs' charges, fairly read, allege disparate treatment, not disparate impact.  Although Plaintiffs argue that the EEOC charges are "silent on the issue of intent" and therefore do not preclude bringing a disparate impact claim, the charges clearly allege that Plaintiffs were treated differently because they are Cuban.

Plaintiffs also claim that *Watkins v. City of Chicago*, 992 F. Supp 971 (N.D. Ill. 1998), supports their contention that Plaintiffs need not make an express disparate impact EEOC charge to bring a claim later based on a disparate impact theory.  Although the court in *Watkins* found that the plaintiff did not need to use the phrase "disparate impact," it also found that her disparate impact claim was reasonably related to her EEOC charge because the charge referred to a policy that could have had a disparate impact on African-Americans.  *Id.* at 973.  The other case cited by Plaintiffs similarly allowed a disparate impact claim to proceed because the EEOC charge referred to a specific facially-neutral policy.  *See*, *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992).  Therefore, even the cases cited by Plaintiff require that a facially-neutral policy be alleged in EEOC disparate treatment charges to support a subsequent disparate impact claim in a complaint.  Here, however, Plaintiffs' EEOC charges not only fail to use the term "disparate impact," but they also fail to allege any specific policy, much less one that could be construed as having a disparate impact on Defendant's Cuban warehouse employees.  Therefore, the EEOC charge and Count I are not reasonably related, and Plaintiffs may not bring a disparate impact claim.  Accordingly, although I already have dismissed Count I for failure to meet pleading standards, I also hold that Count I is outside the scope of Plaintiffs' EEOC charges.

D.  Alleged Violations of Title VII in Counts I, II, and IV - IX That Occurred Before February 13, 2006, Are Time Barred.

Although I already dismissed Counts I and II because they do not meet pleading standards, Defendant argues that Counts I, II, and IV - IX should be dismissed in part as time barred.  The charge-filing provision of Title VII provides that a plaintiff must file a charge with the EEOC within 180 or 300 days of an alleged unlawful employment practice.  42 U.S.C.A. § 2000e-5(e)(1) (West 2009).  In Illinois, the applicable period is 300 days.  *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).  Nonetheless, Plaintiffs contend that any individual allegations of unlawful employment practices under Title VII that may fall outside of this period should not be dismissed because of the continuing violation doctrine.

Plaintiffs' argument fails because the Supreme Court of the United States expressly rejected the argument that the phrase "unlawful employment practice," used in Title VII, codified the continuing violation doctrine.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 122 S. Ct. 2061, 153 L. Ed.2d 106 (2002).  Instead, the word "practice" refers to "a discrete act or single 'occurrence,' even when [the act] has a connection to other acts."  *Id.*  Therefore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges."  *Id.* at 113.  The case Plaintiffs cite to support their argument that the continuing violation doctrine applies to Title VII claims, *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164 (7th Cir. 1996), predates *Nat'l R.R. Passenger Corp.*  Moreover, the Seventh Circuit since has recognized that the continuing violation doctrine does not save time-barred discrete acts alleged under Title VII.  *See*, *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006).

The Court in *Nat'l R.R. Passenger Corp.* provided guidance as to what sorts of employer practices were "discrete acts" for the purposes of Title VII's charge filing period. *See*, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 111. The Court identified illustrative examples of "discrete acts," which include "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." *Id.* (quoting 42 U.S.C. § 2000e-2(a)). Plaintiffs allege that Defendant paid them less than workers who were not Cuban, denied them make-up days, imposed on them a variable schedule, and discharged them in retaliation for complaining about Defendant's discriminatory practices. Each of these alleged practices is consistent with the types of practices the Court identified as discrete acts. Therefore, if Plaintiffs allege that Defendant committed any such discriminatory acts at a time that falls outside of the applicable claim-filing period, then those claims are time barred.

However, Plaintiffs need not "anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006). Dismissal on the basis of an affirmative defense is only appropriate if a plaintiff pleads facts that establish all of the elements of that defense. *Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. App'x 523, 524-25 (7th Cir. 2005); *see also, In re MarchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (dismissing the plaintiff's complaint as time barred because it "establishes an impenetrable defense to [plaintiff's] claims"). Here, Plaintiffs do not plead facts establishing that their Title VII claims are completely time barred. Plaintiffs claim they first complained of discriminatory practices in 2005 and were terminated in November 2006. Between their first complaint and termination, Plaintiffs allege they complained multiple other times and that Defendant continued to discriminate against them. Plaintiffs filed their complaint on November 30, 2006. Applying the 300-day claim-filing period, any alleged violations that occurred before February 13, 2006,

are time barred.  As discussed, Plaintiffs' complaint alleges few specific discrete acts, but Plaintiffs allege at least one act – termination – that occurred within the charge-filing period. Other discrete acts could have occurred between February 13, 2006, and November 30, 2006. Therefore, Plaintiffs' Title VII claims should not be dismissed in their entirety as time barred, but alleged violations of Title VII that occurred before February 13, 2006, are not actionable.

Although I already have dismissed Counts I and II for failing to meet pleading standards, to the extent that those counts allege discrete acts of discrimination under Title VII that occurred before February 13, 2006, I also hold that such allegations in those counts are time barred. Further, Counts IV - IX are dismissed to the extent that they allege discrete acts of discrimination under Title VII that occurred before February 13, 2006.

E.  Alleged Violations of § 1981 in Count III That Occurred Before October 16, 2006, Are Time Barred.

Although I already dismissed Count III because it does not meet pleading standards, Defendant also argues that Count III should be dismissed as time barred.  A claim made under § 1981 is subject to a four-year statute of limitations.  *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383-85, 124 S. Ct. 1836, 158 L. Ed.2d 645 (2004).  Although the Court's holding in *Nat'l R.R. Passenger Corp.* that unlawful employment practices are discrete acts for the purposes of the charge-filing period referred to in Title VII claims, the Seventh Circuit has found that the Court's holding also applies to allegations made under § 1981 for the purposes of the statute of limitations.  *See, Pruitt*, 472 F.3d at 927.  The case Plaintiffs cite to show that the continuing violation doctrine applies to § 1981 claims, *Patterson v. County of Cook*, No. 01 C 9557, 2003 WL 21418337 (N.D. Ill. June 17, 2003), predates *Pruitt*.  Plaintiffs allege the same prohibited acts in their § 1981 claim as they do in their Title VII claims, which are consistent with the

conduct that the Court found to be discrete acts in *Nat'l R.R. Passenger Corp. Nat'l R.R. Passenger Corp.*, 536 U.S. at 111. Therefore, the continuing violation doctrine does not apply to Plaintiffs' allegations under § 1981, and any alleged violations of § 1981 must have occurred during the four-year statute of limitation period to be actionable.

Plaintiffs filed their complaint on October 16, 2010. Applying the four-year limitation period, any allegations by Plaintiff that Defendant violated § 1981 before October 16, 2006, is time barred. Defendant contends that the Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII, did not amend § 1981. For this reason, Defendant argues, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed.2d 982 (2007), still governs § 1981 claims. Accordingly, Defendant claims that Plaintiffs must prove that Defendant made a discriminatory pay decision regarding Plaintiffs (as opposed to proving that Defendant issued Plaintiffs a paycheck reflecting a lower wage than similarly situated workers who are not Cuban) during the short period from October 16, 2006, to November 2006, when Defendant terminated Plaintiffs. Because Plaintiffs do not allege a specific date on which Defendant made a discriminatory pay decision, Defendant urges that Plaintiffs' § 1981 claim be dismissed entirely.

Defendant may be correct that Plaintiff could find it difficult to prove that Defendant committed a § 1981 violation within the narrow applicable limitation period. However, as discussed above, Plaintiffs need not defeat Defendant's defenses in their pleadings, *Hollander*, 457 F.3d at 691 n. 1, and dismissal based on a defense is appropriate only if Plaintiffs' complaint pleads facts that prove Defendant's defense, *Covington*, 154 Fed. App'x at 524-25. Defendant cites *In re MarchFIRST* to argue that after *Twombly* and *Iqbal* the Seventh Circuit has imposed a higher standard on plaintiffs to avoid dismissal based on a statute of limitations defense. Even in *In re MarchFIRST*, however, the court dismissed the plaintiff's claim because the plaintiff

16

pleaded facts that proved the plaintiff's claim was time barred and "establishe[d] an impenetrable defense to [the plaintiff's] claims." *In re MarchFIRST Inc.*, 589 F.3d at 905. Here, Plaintiffs have not pleaded facts that prove Defendant did not violate § 1981 during the period between October 16, 2006, and November 2006. Therefore, Plaintiffs' § 1981 claim should not be dismissed in its entirety on the basis that it is time barred.

In a footnote, Defendant alternatively requests that Plaintiffs be required to plead specific facts showing that Defendant violated § 1981 during the limitation period. This request essentially restates Defendant's contention that Plaintiffs failed to plead sufficient facts to state a plausible claim under the *Twombly* standard. I already held that Count III is dismissed for failure to state a claim under *Twombly*. However, to the extent that Plaintiffs allege violations of § 1981 that occurred before October 16, 2006, I hold that Count III also is time barred.

F.  Count III Alleges Race Discrimination For the Purposes Of § 1981.

Defendant argues that Count III also should be dismissed because Plaintiffs' discrimination claims are based on national origin, not race, and § 1981 only authorizes actions for racial discrimination. Plaintiffs respond that § 1981 can provide the basis for national origin discrimination suits and cite *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223 (7th Cir. 1995) (holding that Italian-American plaintiff could bring a claim under § 1981). *Bisciglia* is based in large part on the Court's analysis in *Saint Francis Coll. v. Al-khazraji*, 481 U.S. 604, 107 S. Ct. 2022, 95 L. Ed.2d 582 (1987). *See*, *Bisciglia*, 45 F.3d at 229-30. Neither party discusses *Saint Francis Coll.* in detail, but it provides a useful framework to understand the relationship between race and national origin discrimination under § 1981.

In *Saint Francis Coll.*, the Court ruled that an Iraqi-American could bring a claim under § 1981 if he could show that "he was subjected to intentional discrimination based on the fact

17

that he was born an Arab, rather than solely on the place or nation of his origin." *Id*. at 613.  The Court examined the prevailing understanding of "race" during the time that Congress adopted the Civil Rights Act of 1866, as well as the Act's legislative history.  *See*, *id.* at 610-13.  The Court concluded that by adopting § 1981 "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or *ethnic characteristics*." *Id*. at 613 (emphasis added).  One such group was people of Arab ancestry, even if Arabs were not considered to be a "race" by contemporary definition.  *See*, *id.*

The court studied 19th century dictionary definitions of "race" and descriptions of "race" by Members of Congress during debates about the Civil Rights Act of 1866.  *See*, *Id.* at 610-12.  Dictionaries defined race in terms of ethnicity and identified certain groups of people as belonging to a specific race, including "Spanish."  *Id.* at 611.  Debates in Congress also referred to "Spanish" and "Latin" as a race.  *Id.* at 612.  Accordingly, the understanding of "race" at the time Congress adopted the Civil Rights Act of 1866 included "Spanish."  I note that Cuba was a Spanish colony until 1902.  Therefore, Congress's understanding of "Spanish" in 1866 may have included Cubans.

Moreover, following the logic of *Saint Francis College*, Plaintiffs can prevail under § 1981 if they can show that Defendant discriminated against Plaintiffs because of their ancestry or ethnic characteristics.  Plaintiffs allege that they are members of a racial minority and have dark hair, eyes and skin.  Those allegations show that Plaintiffs possess ethnic characteristics of the type that Congress intended to protect by adopting § 1981.

Nevertheless, Defendant contends that because Plaintiffs' EEOC charges alleged national origin discrimination, not racial discrimination, the essence of Plaintiffs' claim is not discrimination based on ethnic characteristics.  Defendant dismisses the notion that Plaintiffs'

allegations of dark-colored hair, eyes and skin allow Plaintiffs to bring a claim based on ethnic characteristics under § 1981.  However, the cases Defendant cites do not support its position.  *De la Torres v. Gianni Furniture Co.*, No. 85 C 9924, 1986 WL 6407 (N.D. Ill. June 5, 1986), is inapposite because it predates *Saint Francis Coll.*  Nevertheless, even *De la Torres* recognized that a plaintiff must make an "'allegation of racial animus, either explicit or *reasonably inferable from the pleadings*'" to state a claim under § 1981.  *Id.* at *2 (emphasis added) (quoting *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984).  In *De la Torres*, the Cuban plaintiff failed to make such an allegation and therefore could not bring a § 1981 claim.  *Id.*  Here, however, Plaintiffs allege that they have dark-colored skin, eyes and hair and that they are members of a racial minority, which could give rise to an inference of racial animus.

Similarly, *Quintana v. Byrd*, 669 F. Supp. 849 (N.D. Ill. 1987), lends no support to Defendant's position and in fact strengthens Plaintiffs'.  There, the court denied summary judgment against a Cuban plaintiff who brought a claim under § 1981.  *Id.* at 850.  Again, the court recognized that the dispositive factor in whether the plaintiff's claim should stand was whether "defendants discriminated against plaintiff because of her 'ethnic characteristics.'" *Id.* Additionally, the court found that alternative pleading of national origin discrimination in violation of Title VII did not preclude alleging racial discrimination in violation of § 1981.  *Id.* Finally, the court noted that the *pro se* plaintiff could reasonably equate national origin and race discrimination.  *Id.*  Here, Plaintiffs allege ethnic characteristics that could have been the basis for alleged discrimination by Defendant.  Plaintiffs also bring alternate Title VII and § 1981 claims.  Moreover, as in *Quintana*, Plaintiffs filed their EEOC charges *pro se* and could reasonably have conflated national origin and race discrimination.  Therefore, contrary to Defendant's claims, *Quintana* supports finding that Plaintiffs may bring a § 1981 claim.

The last case upon which Defendant relies, *Diaz v. Kraft Foods Global, Inc.*, No. 08 C 6814, 2010 WL 2166399 (N.D. Ill. May 27, 2010), also recognized that § 1981 barred discrimination on the basis of "ancestry or ethnic characteristics." *Id*. at *4 (quoting *Saint Francis Coll.*, 481 U.S. at 613). The court granted summary judgment to defendant on the plaintiffs' § 1981 claims. *Id.* Although the court did not detail its reasons, it implied that plaintiffs failed to allege discrimination based on ethnicity. *See*, *id.* Here, Plaintiffs allege facts about their physical appearance that reasonably contribute to an inference that Defendant discriminated against Plaintiffs based on ethnic characteristics. Therefore, Plaintiffs may bring a § 1981 claim against Defendants consistent with *Diaz*.

Although I have dismissed Count III for other reasons, I deny Defendant's motion to dismiss Count III because it fails to allege racial discrimination for the purposes of § 1981. Plaintiffs allege that they possess ethnic characteristics that could provide the basis for a race discrimination claim under § 1981.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. Counts I, II and III are dismissed on multiple bases. First, those counts are dismissed because they do not meet the pleading standard articulated in *Twombly* and *Iqbal*. Second, Counts I through IX are dismissed to the extent that they allege acts of discrimination that occurred outside of the relevant limitation periods. Third, to the extent that Counts I and II allege race discrimination in violation of Title VII, those counts are dismissed as outside the scope of Plaintiffs' EEOC national origin charges. Fourth, Count I also is dismissed because Plaintiffs' disparate impact claim is outside of the scope of their EEOC disparate treatment charges. However, Count III states a race discrimination claim for the purposes of § 1981 because

Plaintiffs allege ethnic characteristics that could have been the basis for discrimination against

Plaintiffs by Defendant.

ENTER:

James B. Zagel
United States District Judge

DATE:  May 9, 2011